UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | | |
|---|---|---|
| THE HANOVER INSURANCE COMPANY, | ) ) ) | Case No. |
| Plaintiff, | ) ) | |
| v. | ) ) ) | **COMPLAINT FOR DECLARATORY JUDGMENT** |
| AGRONOMY SCIENCES, LLC and JEFFREY MORRIS, | ) ) ) | |
| Defendants. | ) ) | |

Plaintiff, THE HANOVER INSURANCE COMPANY ("Hanover") for its Complaint for Declaratory Judgment against Defendants AGRONOMY SCIENCES, LLC and JEFFREY MORRIS alleges as follows:

### NATURE OF THE ACTION

1. This is an insurance coverage dispute. Hanover seeks a declaration that it has no duty to defend or indemnify Agronomy Sciences, LLC d/b/a Hefty Seed ("Agronomy Sciences") or its employee, Jeffery Morris, under a Private Company Advantage insurance policy Hanover issued to Agronomy Sciences (the "Policy") in connection with a lawsuit (the "Lawsuit") brought against the Defendants by Titan Pro SCI, Inc. ("Titan Pro"). The Lawsuit arises out of a dispute between Titan Pro, on the one hand, and the Defendants, on the other, regarding Agronomy Sciences' employment of Mr. Morris, which allegedly violated Mr. Morris' independent dealer contract with Titan Pro that contained exclusivity, confidentiality, and non-competition provisions.

2. The Policy only provides coverage to the Defendants for the Lawsuit if any **Insured**[1] proposed for coverage under the Policy, including the Defendants, were not aware of any fact, circumstance, or situation that might reasonably be expected to result in a **Claim** (i.e., the Lawsuit). To obtain the Policy, Agronomy Sciences represented to Hanover in its insurance application that no **Insured** was aware of any fact, circumstance, or situation that might reasonably be expected to result in a **Claim**. Contrary to that representation, the Defendants admitted in the Lawsuit that they were aware of Mr. Morris' contract with Titan Pro, and that they did not disclose that Mr. Morris accepted employment with Agronomy Sciences out of concern that Titan Pro would commence litigation against Mr. Morris. As a result, there is no coverage for the Lawsuit under the Policy. Other terms and conditions of the Policy also bar or limit coverage for the Lawsuit.

## THE PARTIES

3. Hanover is an insurance company incorporated under the laws of the State of New Hampshire, with its principal place of business in Massachusetts.

4. Agronomy Sciences, LLC d/b/a Hefty Seed has admitted in federal court pleadings that it is a citizen of South Dakota.

5. Jeffrey Morris has admitted in federal court pleadings that he is domiciled in Raymond, Minnesota, Kandiyohi County, and is therefore a citizen of Minnesota.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1332(a), 2201, and 2202, as complete diversity exists between the parties and the amount in controversy

---

[1] Terms in bold are defined in the Policy.

2

exceeds the sum or value of $75,000, exclusive of interest and costs, and Hanover seeks declaratory relief regarding claims of actual controversy within this Court's jurisdiction.

7. Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b)(2) and (3), in that a substantial part of the events or omissions giving rise to this action occurred within this district.

## THE POLICY

8. Hanover issued the Policy, Policy No. LHX-H676209-00, to Agronomy Sciences for the period of July 1, 2021 to July 1, 2022. A true and correct copy of the Policy is attached as Exhibit A.

9. Hanover issued the Policy to Agronomy Sciences in reliance upon the New Business Application signed by Agronomy Sciences' CFO, Maria Walz, on May 19, 2021 on behalf of all **Insureds** proposed for coverage under the Policy.

10. The Policy includes a Directors & Officers and Entity Liability Coverage Part ("D&O Part") that provides a Maximum Aggregate Limit of Liability of $1,000,000, subject to a $15,000 each **Claim** Retention for Individual Indemnified Liability Coverage under Insuring Agreement I.B and Corporate Entity Liability Coverage under Insuring Agreement I.C.

11. The Insuring Agreements set forth in Section I of the D&O Part of the Policy state as follows:

> I. **INSURING AGREEMENTS**
>
> A. Individual Non-Indemnified Liability
>
> The **Insurer** will pay on behalf of each **Insured Individual**, **Loss** which the **Insured Individual** is legally obligated to pay due to a **Claim** first made against the **Insured Individual** during the **Policy Period**, or the Extended Reporting Period if applicable, except for **Loss** which the **Insured Entity** pays to or on behalf of the **Insured Individual** as indemnification.

3

  B. <u>Individual Indemnified Liability</u>

  The **Insurer** will pay on behalf of the **Insured Entity**, **Loss** which the **Insured Individual** is legally obligated to pay due to a **Claim** first made against the **Insured Individual** during the **Policy Period**, or the Extended Reporting Period if applicable, but only to the extent the **Insured Entity** indemnifies the **Insured Individual** for such **Loss**.

  C. <u>Corporate Entity Liability</u>

  The **Insurer** will pay on behalf of an **Insured Entity**, **Loss** which the **Insured Entity** is legally obligated to pay due to a **Claim** first made against the **Insured Entity** during the **Policy Period**, or the Extended Reporting Period if applicable.

12. Section III. of the D&O Part of the Policy provides the following relevant definitions:

  **Claim** means:

  A. With respect to Insuring Agreements I.A. and I.B., any:

   1. Written demand received by an **Insured** for monetary or non-monetary relief including injunctive relief;

   2. Civil proceeding commenced by the service of a complaint or similar pleading;

   3. Criminal proceeding commenced by the filing of charges;

   4. Formal administrative or regulatory proceeding, including a Wells Notice, commenced by the filing of charges, formal investigative order or similar document;

   5. Arbitration or mediation proceeding commenced by receipt of a demand for arbitration or mediation or similar document; or

   6. Official request for **Extradition**;

  against an **Insured Individual** for a **Wrongful Act**, including any appeal therefrom; …

  C. With respect to Insuring Agreement I.C., any:

4

1. Written demand received by an **Insured** for monetary or non-monetary relief including injunctive relief;

2. Civil proceeding commenced by the service of a complaint or similar pleading;

3. Criminal proceeding commenced by the filing of charges;

4. Formal administrative or regulatory proceeding commenced by the filing of charges, formal investigative order or similar document; or

5. Arbitration or mediation proceeding commenced by the receipt of a demand for arbitration or mediation or similar document;

against an **Insured Entity** for a **Wrongful Act,** including any appeal therefrom; ….

\* \* \*

**Insured Individual** means any past, present or future **Executive** or employee (including part-time, seasonal, leased or temporary employees), intern or volunteer of the **Insured Entity** while acting solely within his or her capacity as such on behalf of the **Insured Entity** or in an **Outside Capacity**.

\* \* \*

**Loss** means **Defense Expenses** and the amount the **Insured** is legally obligated to pay as a result of a **Claim** including:

A. Monetary judgments, awards or settlements, pre-judgment and post-judgment interest and compensatory damages;

B. Punitive or exemplary damages or the multiple portion of any multiplied damage award if insurable under the law of the jurisdiction most favorable to the insurability of such damages where such jurisdiction has a substantial relationship to the **Insured**, the **Insurer**, or to the **Claim** giving rise to such damages; or

C. Civil fines or penalties assessed against an **Insured Individual**, including civil penalties assessed against an **Insured Individual** pursuant to the Foreign Corrupt Practices Act (15 U.S.C. 78dd-2(g)(2)(B)), if and to the extent such fines or penalties are insurable under the law of the jurisdiction in which such fines and penalties are assessed.

5

However, **Loss** does not include:

1. Any amounts which an **Insured** is obligated to pay as a result of a **Claim** seeking relief or redress for non-monetary damages including injunctive relief;

2. Any amount deemed uninsurable by law;

3. Taxes, except a tax imposed upon an **Insured Individual** in connection with the bankruptcy, receivership, conservatorship or liquidation of an **Insured Entity** but only if:

    a. Such tax is insurable under the law pursuant to which this Coverage Part is construed; and

    b. An **Insured Individual** is not indemnified for such tax by an **Insured Entity** or any other person or organization.

4. **Investigative Costs** (other than costs arising from a **Security Holder Derivative Demand**) incurred by an **Insured** in the defense or investigation of any action, proceeding or demand that was not a **Claim** even if such amount also benefits the defense of a covered **Claim** or such action, proceeding or demand that subsequently gives rise to a **Claim**;

5. Any amount which represents or is substantially equivalent to an increase in the consideration paid by an **Insured Entity** in connection with its purchase of any securities or assets; or

6. Any amount not indemnified by the **Insured Entity** for which an **Insured Individual** is absolved from payment by reason of any covenant, agreement or court order.

\*     \*     \*

**Wrongful Act** means any actual or alleged act, error, omission, misstatement, misleading statement, neglect, breach of duty committed or attempted, or allegedly committed or attempted by:

A. With respect to Insuring Agreements I.A. and I.B, an **Insured Individual** in his or her capacity as such or any other matter claimed against an **Insured Individual** solely in his or her status as such; or

B. With respect to Insuring Agreement I.C., an **Insured Entity**.

6

13. Section VI.D. of the D&O Part of the Policy states as follows:

> No **Insured** shall settle any **Claim**, voluntarily make any payment, assume any obligation, or incur expense related to a **Claim** without the **Insurer's** consent.

## THE UNDERLYING LAWSUIT

14. On November 5, 2021, Titan Pro filed the original complaint in the Lawsuit against Jeffrey Morris, and on April 1, 2022, Titan Pro filed the operative Amended Complaint adding Agronomy Sciences as a defendant to the Lawsuit. A true and correct copy of the Amended Complaint is attached as Exhibit B.

15. On April 18, 2022, Defendants filed their Answer and Counterclaim in response to Titan Pro's Amended Complaint in the Lawsuit. A true and correct copy of Defendants' Answer and Counterclaim is attached as Exhibit C.

16. Titan Pro alleged that Mr. Morris was an independent-contractor dealer under contract with Titan Pro from 2015 until October 2021, and that Mr. Morris' contract with Titan Pro contained exclusivity as well as confidentiality and non-compete provisions. Ex. B at ¶¶4, 24-27. Defendants admitted these facts in their Answer. Ex. C at ¶¶4, 24-27.

17. Titan Pro alleged that Mr. Morris informed Titan Pro in December 2020 that he was considering leaving the industry or working for one of Titan Pro's competitors, Agronomy Sciences. Ex. B at ¶30. Defendants admitted these facts in their Answer. Ex. C at ¶30.

18. Titan Pro alleged that, in the course of discussions with Mr. Morris to determine if he would remain a Titan Pro dealer, Titan Pro reminded Mr. Morris of his non-compete and confidentiality obligations under his contract with Titan Pro. Ex. B at ¶¶32-33. Defendants admitted that Titan Pro referenced the confidentiality and non-compete provisions of Mr. Morris'

7

contract in discussions regarding Mr. Morris' potential employment with Agronomy Sciences. Ex. C at ¶33.

19. Titan Pro alleged that, by early January 2021, Mr. Morris voiced his intent to remain a Titan Pro dealer. Ex. B at ¶34.

20. Titan Pro alleged that Mr. Morris secretly accepted formal employment with Agronomy Sciences on February 1, 2021, and continued to secretly work for both companies for months without disclosing to Titan Pro that he was simultaneously employed with Agronomy Sciences and selling competing products. Ex. B at ¶6-7, 41, 49.

21. Defendants admitted that Mr. Morris began his employment with Agronomy Sciences on February 1, 2021. Ex. C at ¶41. Defendants further admitted that Mr. Morris did not tell Titan Pro that he had accepted employment with Agronomy Sciences because, among other things, he was concerned that Titan Pro would wrongly commence litigation against him. Ex. C at ¶49.

22. Titan Pro alleged that, as of February 1, 2021, Agronomy Sciences had actual knowledge of Mr. Morris' contract with Titan Pro, as Mr. Morris provided a copy of the contract to Agronomy Sciences on December 11, 2020, and Agronomy Sciences subsequently discussed the contract with its attorneys. Ex. B at ¶44. Defendants admitted these facts in their Answer. Ex. C at ¶44.

23. Titan Pro alleged that Mr. Morris informed both Brandon Howard (Agronomy Sciences agronomist), and Brian Hefty (CEO of Agronomy Sciences) of the existence of his contract with Titan Pro, that Mr. Morris provided Maria Walz with a copy of his contract on December 11, 2020, and that Ms. Walz forwarded Mr. Morris' contract to Brian Hefty on

December 29, 2020. Ex. B at ¶¶115-18. Defendants admitted these facts in their Answer. Ex. C at ¶¶115-18.

24. Titan Pro alleged that it discovered in July 2021 that Mr. Morris was an agronomist for Agronomy Sciences when Titan Pro discovered that Mr. Morris was listed on Agronomy Sciences' website as an agronomist for its Olivia, Minnesota location. Ex. B at ¶50.

25. Titan Pro alleged that it terminated Mr. Morris' contract effective October 2, 2021, and that Mr. Morris has since continued to sell products on Agronomy Sciences' behalf. Ex. B at ¶57. Defendants admitted these facts in their Answer. Ex. C at ¶57.

26. Based on these allegations, Titan Pro asserted the following causes of action: (1) Breach of Contract – Exclusivity Clause against Mr. Morris; (2) Breach of Contract – Non-Competition and Confidentiality Clause against Mr. Morris; (3) Breach of Implied Covenant of Good Faith and Fair Dealing against Mr. Morris; (4) Breach of Fiduciary Duty of Loyalty against Mr. Morris; (5) Aiding and Abetting Breach of Fiduciary Duty of Loyalty against Agronomy Sciences; (6) Fraudulent Misrepresentation/Non-Disclosure against Mr. Morris; (7) Tortious Interference with Contact – Dealer Contract against Agronomy Sciences; and (8) Unjust Enrichment against Agronomy Sciences. Ex. B at ¶¶58-127.

27. Despite litigating the Lawsuit for over five months, Defendants first reported the Lawsuit to Hanover for coverage under the Policy on April 13, 2022.

28. On May 31, 2022, Hanover issued a letter via e-mail to the **Insureds'** contact, Maria Walz, with a copy to the **Insureds'** insurance agent/broker, in which Hanover declined coverage for Mr. Morris in connection with the Lawsuit, and reserved rights under several provisions of the Policy with respect to Agronomy Sciences.

29. On January 18, 2023, Hanover learned that the Defendants had agreed to participate in a principal-to-principal settlement conference on January 20, 2023, without their respective attorneys, in an attempt to resolve the Lawsuit.

30. On January 18 and January 19, 2023, Hanover reminded Agronomy Sciences of Section V.D. of the D&O Part regarding consent to settle, and reserved rights under Section V.D. to disclaim coverage for any settlement reached without Hanover's involvement or consent. Without waiving any rights, Hanover made itself available by phone and email to participate in the settlement conference on January 20, 2023, but was not permitted to participate.

31. On January 20, 2023, Defendants agreed with Titan Pro to settle the Lawsuit in exchange for a payment from Agronomy Sciences to Titan Pro, without Hanover's knowledge or consent.

32. On January 24, 2023, Hanover contacted Agronomy Sciences and inquired about the settlement conference, and was informed that Defendants and Titan Pro settled the Lawsuit.

33. On February 2, 2023, Defendants and Titan Pro signed a settlement agreement resolving the Lawsuit. A portion of the settlement payment paid to Titan Pro on behalf of Defendants was paid to buy out Mr. Morris' contract with Titan Pro in order to release Mr. Morris from all contractual obligations to Titan Pro under the contract.

34. On February 14, 2023, counsel for Defendants issued a letter to Hanover, demanding that Hanover provide coverage for the settlement payment and all defense costs incurred by Agronomy Sciences on behalf of Defendants in connection with the Lawsuit.

35. On March 3, 2023, Hanover issued a supplemental coverage position letter, explaining that there is no coverage for the Lawsuit under the Policy.

## THE COVERAGE DISPUTE

36. Defendants seek coverage from Hanover under the Policy in connection with the Lawsuit.

37. Hanover denies that there is coverage for the Lawsuit under the Policy.

38. An actual, present, and bona fide controversy exists between Hanover and Defendants with respect to whether there is defense and indemnity coverage for the Lawsuit under the Policy.

39. A judicial declaration is necessary to establish the parties' rights and duties, if any, under the Policy.

## COUNT I – DECLARATORY JUDGMENT
### (Prior Knowledge Exclusion)

40. Hanover repeats and incorporates by reference herein the allegations in Paragraphs 1 through 39 of this Complaint.

41. Section XI of the New Business Application states:

> Is any **Insured** proposed for coverage aware of any fact, circumstance, or situation that might reasonably be expected to result in a **Claim** that would fall within the scope of the proposed **Liability Coverage Parts**?

42. The response provided in the New Business Application on behalf of the **Insureds**, which was signed by Maria Walz, CFO of Agronomy Sciences, on May 19, 2021 was "No."

43. Section XI of the New Business Application further states:

> **IMPORTANT**: Without prejudice to any other rights or remedies of the **Insurer**, the Applicant understands and agrees that if any such fact, circumstance or situation exists, whether or not disclosed in response to the question above, any claim or action arising from such fact, circumstance or situation is excluded from coverage under the proposed policy, if issued by the **Insurer**.

11

44. Mr. Morris and Agronomy Sciences are **Insureds** under the Policy.

45. Defendants admitted that Titan Pro raised the confidentiality and non-compete provisions of Mr. Morris' contract when he informed Titan Pro in December 2020 that he was considering potential employment with Agronomy Sciences.

46. Defendants admitted that Agronomy Sciences, including its CEO and CFO, had received a copy of Mr. Morris' contract with Titan Pro, and had discussed the contract with its attorneys before Mr. Morris began employment with Agronomy Sciences.

47. Defendants admitted that Mr. Morris did not tell Titan Pro that he had accepted employment with Agronomy Sciences because, among other things, he was concerned that Titan Pro would commence litigation against him.

48. Defendants were therefore aware of facts, circumstances, or a situation that might reasonably be expected to result in a **Claim**, such as the Lawsuit, such that coverage for the Lawsuit is barred pursuant to the prior knowledge exclusion in Section XI of the New Business Application, which is incorporated into the Policy.

### COUNT II – DECLARATORY JUDGMENT
### (Insured Capacity)

49. Hanover repeats and incorporates by reference herein the allegations in Paragraphs 1 through 48 of this Complaint.

50. There is no coverage for Mr. Morris because he was not acting solely in his capacity as an employee of Agronomy Sciences, as required for coverage under the Policy.

51. Subject to its terms and conditions, the Policy provides that Hanover will pay on behalf of each **Insured Individual**, **Loss** which the **Insured Individual** is legally obligated to pay due to a **Claim**.

52. The definition of **Claim** includes a "civil proceeding commenced by the service of a complaint or similar pleading … against an **Insured Individual** for a **Wrongful Act**, including any appeal therefrom."

53. The definition of **Insured Individual** is limited to "any past, present or future **Executive** or employee (including part-time, seasonal, leased or temporary employees), intern or volunteer of the **Insured Entity** while acting solely within his or her capacity as such on behalf of the **Insured Entity** or in an **Outside Capacity**."

54. The definition of **Wrongful Act** is limited to "any actual or alleged act, error, omission, misstatement, misleading statement, neglect, breach of duty committed or attempted, or allegedly committed or attempted by … an **Insured Individual** in his or her capacity as such or any other matter claimed against an **Insured Individual** solely in his or her status as such."

55. Titan Pro did not allege in the Lawsuit that Mr. Morris was acting solely in his capacity as an employee of Agronomy Sciences. As a result, with respect to Mr. Morris, the Lawsuit is not a **Claim** against an **Insured Individual** for a **Wrongful Act**, as required to fall within the scope of coverage of the Policy.

## COUNT III – DECLARATORY JUDGMENT
### (Lack of Consent)

56. Hanover repeats and incorporates by reference herein the allegations in Paragraphs 1 through 55 of this Complaint.

57. There is no coverage under the Policy for the settlement of the Lawsuit because Agronomy Sciences settled the Lawsuit without Hanover's consent.

58. Section VI.D. of the D&O Part of the Policy states as follows:

> No **Insured** shall settle any **Claim**, voluntarily make any payment, assume any obligation, or incur expense related to a **Claim** without the **Insurer's** consent.

13

59. Hanover reserved its rights under Section VI.D. of the D&O Part of the Policy. Hanover made itself available to participate in the settlement conference between Agronomy Sciences and Titan Pro on January 20, 2023 but was purposely left out of the settlement conference by Agronomy Sciences. Agronomy Sciences settled the Lawsuit without Hanover's knowledge or consent.

60. Agronomy Sciences therefore breached the Section VI.D. of the Policy, such that there is no coverage for the settlement under the Policy.

## COUNT IV – DECLARATORY JUDGMENT
### (Definition of Loss)

61. Hanover repeats and incorporates by reference herein the allegations in Paragraphs 1 through 61 of this Complaint.

62. The definition of **Loss** is limited to the "amount the **Insured** is legally obligated to pay as a result of a **Claim**" and does not include "any amounts which an **Insured** is obligated to pay as a result of a **Claim** seeking relief or redress for non-monetary damages including injunctive relief" or "any amount deemed uninsurable by law."

63. The amount paid to settle the Lawsuit, or some portion thereof, does not constitute **Loss** as defined in the Policy. Therefore, there is no coverage for such settlement amounts under the Policy.

## COUNT IV – DECLARATORY JUDGMENT
### (Allocation)

64. Hanover repeats and incorporates by reference herein the allegations in Paragraphs 1 through 60 of this Complaint.

65.     To the extent there is partial coverage for the Lawsuit under the Policy, Hanover is entitled to an allocation pursuant to Section X of the Policy's D&O Part, which provides, in relevant part, as follows:

> **X.     ALLOCATION**
>
> If an **Insured** incurs **Loss** on account of any **Claim** and such **Claim** includes both covered and non-covered matters, coverage with respect to such **Claim** shall apply as follows:
>
> *     *     *
>
> B.     The **Insurer** shall fairly allocate all remaining loss that an **Insured** incurred on account of such **Claim** between covered **Loss** and uncovered loss based upon the relative legal exposure of the parties to such matters.

66.     To the extent there is coverage under the Policy for one of the Defendants, but not the other, or a portion of the settlement of the Lawsuit, Hanover is entitled to an allocation based upon the relative legal exposure of the parties pursuant to Section X of the Policy's D&O Part.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff The Hanover Insurance Company requests that this Court enter a judgment in its favor and against Defendants, awarding the following relief:

a. A declaration that The Hanover Insurance Company owes no coverage to the Defendants in connection with the Lawsuit;

b. In the alternative, a declaration that The Hanover Insurance Company is entitled to an allocation based upon the relative legal exposure of the parties for covered and non-covered matters in the Lawsuit; and

c. For such other and further relief at law or in equity that the Court deems just and proper.

## **RESERVATION OF RIGHTS**

The Policy contains terms, conditions, and exclusions that may be relevant to the Lawsuit but that are not currently implicated by this declaratory judgment action. Nothing in this complaint should be construed as a waiver by Hanover of any coverage defenses under the Policy. Hanover continues to reserve the right to raise all other terms, conditions, and exclusions as defenses to coverage for any claim made under the Policy where appropriate.

Dated: April 19, 2023.

                              GUNDERSON, PALMER, NELSON
                                 & ASHMORE, LLP

By:  */s/ Rebecca L. Mann*
      Rebecca L. Mann
      *Attorneys for Plaintiff*
      P.O. Box 8045
      Rapid City, SD  57709
      Telephone: (605) 342-1078
      Fax:  (605) 342-9503
      E-mail:  rmann@gpna.com

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
The Hanover Insurance Company

## DEFENDANTS
Agronomy Sciences, LLC and Jeffrey Morris

**(b)** County of Residence of First Listed Plaintiff: Hillsborough
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant: Minnehaha
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Rebecca L. Mann
Gunderson, Palmer, Nelson & Ashmore, LLP

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*
- [ ] 1 U.S. Government Plaintiff
- [ ] 2 U.S. Government Defendant
- [ ] 3 Federal Question (U.S. Government Not a Party)
- [x] 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)* (For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [x] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [x] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

**CONTRACT**
- [x] 110 Insurance
- [ ] 120 Marine
- [ ] 130 Miller Act
- [ ] 140 Negotiable Instrument
- [ ] 150 Recovery of Overpayment & Enforcement of Judgment
- [ ] 151 Medicare Act
- [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans)
- [ ] 153 Recovery of Overpayment of Veteran's Benefits
- [ ] 160 Stockholders' Suits
- [ ] 190 Other Contract
- [ ] 195 Contract Product Liability
- [ ] 196 Franchise

**REAL PROPERTY**
- [ ] 210 Land Condemnation
- [ ] 220 Foreclosure
- [ ] 230 Rent Lease & Ejectment
- [ ] 240 Torts to Land
- [ ] 245 Tort Product Liability
- [ ] 290 All Other Real Property

**TORTS — PERSONAL INJURY**
- [ ] 310 Airplane
- [ ] 315 Airplane Product Liability
- [ ] 320 Assault, Libel & Slander
- [ ] 330 Federal Employers' Liability
- [ ] 340 Marine
- [ ] 345 Marine Product Liability
- [ ] 350 Motor Vehicle
- [ ] 355 Motor Vehicle Product Liability
- [ ] 360 Other Personal Injury
- [ ] 362 Personal Injury - Medical Malpractice

**CIVIL RIGHTS**
- [ ] 440 Other Civil Rights
- [ ] 441 Voting
- [ ] 442 Employment
- [ ] 443 Housing/ Accommodations
- [ ] 445 Amer. w/Disabilities - Employment
- [ ] 446 Amer. w/Disabilities - Other
- [ ] 448 Education

**TORTS — PERSONAL INJURY**
- [ ] 365 Personal Injury - Product Liability
- [ ] 367 Health Care/ Pharmaceutical Personal Injury Product Liability
- [ ] 368 Asbestos Personal Injury Product Liability

**PERSONAL PROPERTY**
- [ ] 370 Other Fraud
- [ ] 371 Truth in Lending
- [ ] 380 Other Personal Property Damage
- [ ] 385 Property Damage Product Liability

**PRISONER PETITIONS — Habeas Corpus:**
- [ ] 463 Alien Detainee
- [ ] 510 Motions to Vacate Sentence
- [ ] 530 General
- [ ] 535 Death Penalty

**Other:**
- [ ] 540 Mandamus & Other
- [ ] 550 Civil Rights
- [ ] 555 Prison Condition
- [ ] 560 Civil Detainee - Conditions of Confinement

**FORFEITURE/PENALTY**
- [ ] 625 Drug Related Seizure of Property 21 USC 881
- [ ] 690 Other

**LABOR**
- [ ] 710 Fair Labor Standards Act
- [ ] 720 Labor/Management Relations
- [ ] 740 Railway Labor Act
- [ ] 751 Family and Medical Leave Act
- [ ] 790 Other Labor Litigation
- [ ] 791 Employee Retirement Income Security Act

**IMMIGRATION**
- [ ] 462 Naturalization Application
- [ ] 465 Other Immigration Actions

**BANKRUPTCY**
- [ ] 422 Appeal 28 USC 158
- [ ] 423 Withdrawal 28 USC 157

**INTELLECTUAL PROPERTY RIGHTS**
- [ ] 820 Copyrights
- [ ] 830 Patent
- [ ] 835 Patent - Abbreviated New Drug Application
- [ ] 840 Trademark
- [ ] 880 Defend Trade Secrets Act of 2016

**SOCIAL SECURITY**
- [ ] 861 HIA (1395ff)
- [ ] 862 Black Lung (923)
- [ ] 863 DIWC/DIWW (405(g))
- [ ] 864 SSID Title XVI
- [ ] 865 RSI (405(g))

**FEDERAL TAX SUITS**
- [ ] 870 Taxes (U.S. Plaintiff or Defendant)
- [ ] 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
- [ ] 375 False Claims Act
- [ ] 376 Qui Tam (31 USC 3729(a))
- [ ] 400 State Reapportionment
- [ ] 410 Antitrust
- [ ] 430 Banks and Banking
- [ ] 450 Commerce
- [ ] 460 Deportation
- [ ] 470 Racketeer Influenced and Corrupt Organizations
- [ ] 480 Consumer Credit (15 USC 1681 or 1692)
- [ ] 485 Telephone Consumer Protection Act
- [ ] 490 Cable/Sat TV
- [ ] 850 Securities/Commodities/ Exchange
- [ ] 890 Other Statutory Actions
- [ ] 891 Agricultural Acts
- [ ] 893 Environmental Matters
- [ ] 895 Freedom of Information Act
- [ ] 896 Arbitration
- [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- [ ] 950 Constitutionality of State Statutes

## V. ORIGIN *(Place an "X" in One Box Only)*
- [x] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. §§ 1332(a), 2201, and 2202

Brief description of cause:
Declaratory Judgment - Insurance Coverage

## VII. REQUESTED IN COMPLAINT:
- [ ] CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: [ ] Yes  [x] No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE _____  DOCKET NUMBER _____

DATE: 4/19/2023
SIGNATURE OF ATTORNEY OF RECORD: s/ Rebecca L. Mann

**FOR OFFICE USE ONLY**

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____